Filed 8/31/22  In re Alyssa O. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re ALYSSA O. et al., Persons Coming Under the Juvenile Court Law. | B316590, B317034 (Los Angeles County Super. Ct. No. 19CCJP02867A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. RAELENE O., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stacy Wiese, Judge.  Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Raelene O. (mother) appeals from an order terminating her parental rights to her three children: Alyssa O. (born March 2011); Chloe O. (born March 2014), and Dominic O. (born May 2019). Mother challenges the juvenile court's ruling denying her petitions filed pursuant to Welfare and Institutions Code section 388, which sought reinstatement of family reunification services in order to avoid termination of parental rights.[1] Mother also challenges the subsequent order terminating her parental rights.[2] We find no error and affirm the juvenile court's orders.

### FACTUAL AND PROCEDURAL BACKGROUND
**Section 300 petition and detention**

In May 2019, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that Dominic tested positive for amphetamines at birth and mother tested positive for amphetamines and marijuana. Mother admitted she used drugs during her pregnancy and that she had no prenatal care. Mother reported that Dominic's father

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother filed two separate appeals, assigned appellate case Nos. B316590 and B317034, which this court has consolidated.

2

(Marvin A.)[3] was physically and mentally abusive and forced her to use drugs.

During a hospital interview with the investigating social worker, mother explained that she had been in a relationship with Marvin for about a year. When she became pregnant with Dominic, Marvin wanted her to have an abortion. It was at this point that Marvin began forcing mother to use drugs—hitting her if she refused, though never in front of the other children. At the time of the interview, mother had not seen Marvin for a few weeks. Mother added that her relationship with Alyssa's father, Luis V., was also violent prior to Alyssa's birth.

Mother claimed she started using methamphetamine a couple weeks into her pregnancy with Dominic. During her pregnancy she lived in Arizona where she saw a doctor twice for prenatal care. She acknowledged last using methamphetamines a few weeks earlier and last used marijuana the previous week.

Paternal grandfather reported that Alyssa had been living with him and the paternal grandmother for over a year, and Chloe had been living with them for a year.

Eight-year-old Alyssa reported living with her paternal grandparents and uncle and that she did not often see mother. Alyssa had visited mother at the hospital, but prior to that had not seen mother since Alyssa's previous summer vacation. Alyssa denied ever seeing Marvin do anything mean.

Mother denied testing positive for drugs at the births of her other children, however, DCFS received a referral in 2011, when mother tested positive for marijuana at Alyssa's birth. Alyssa did

---

[3]    Marvin A. is not a party to this appeal, nor are the fathers of Alyssa or Chloe.

not test positive.  At the 2011 referral, mother said she started using marijuana when she was 16 years old.  As mother then resided with the maternal grandparents and had a strong support system, the referral was closed as unfounded.

On May 7, 2019, DCFS filed a petition pursuant to section 300, subdivisions (a) and (b) on behalf of eight-year-old Alyssa, five-year-old Chloe, and newborn Dominic alleging the children were at risk due to mother's history of violent altercations with both Marvin and Luis, mother's and Marvin's drug abuse, and Dominic testing positive for amphetamine at birth.

At the May 8, 2019 detention hearing, mother appeared and was appointed counsel.  The juvenile court ordered the children detained from parental custody and scheduled a jurisdictional hearing.

**Jurisdiction**

DCFS filed a jurisdiction/disposition report in late May 2019.  Dominic was in foster care and Alyssa and Chloe remained in the home of the paternal grandparents.  Mother had not returned any of the social worker's calls or texts and had not made herself available to be interviewed.

On June 28, 2019, the social worker made contact with mother, who admitted she was smoking marijuana and methamphetamine.  Mother subsequently failed to appear for a scheduled meeting with the social worker.  In August 2019, mother reported that she was "back on the streets" and did not have a permanent address.  Though mother promised to text the social worker and provide the maternal grandmother's address to use as mother's address for mailing purposes, she never did.  Mother had no visits with the children, nor had she requested any visits.

4

In December 2019, DCFS reported that mother had not inquired about nor visited the children since the onset of the case.

On March 11, 2020, DCFS reported that mother had not contacted DCFS nor provided proof of her enrollment in any treatment programs.  Mother had not visited the children since they were detained from her care 10 months earlier, nor had she contacted the caretakers to inquire about the children's well-being.

At the March 11, 2020 adjudication hearing, the juvenile court found the children were as described under section 300, subdivision (b)(1).  The court declared the children to be dependents, removed them from parental custody, and ordered family reunification services.  Mother was ordered to attend a substance abuse treatment program with testing, individual counseling to address case issues including domestic violence, a domestic violence support group for victims, and parenting instruction.

**Reunification period**

At the six-month review hearing in September 2020, DCFS reported that mother's whereabouts remained unknown, and she had not responded to the agency's attempts to contact her. Mother had not visited the children.  Alyssa and Chloe were thriving in the care of paternal grandparents, and the paternal grandparents wished to adopt them.  Dominic was thriving in the care of his foster parents, who wished to adopt him.

At the September 6, 2020 six-month review hearing, the juvenile court terminated family reunification services because the parents were not in compliance with the case plan.  The court scheduled a section 366.26 hearing to select and implement permanent plans for the children.

**Permanency planning period**

On September 29, 2020, mother contacted DCFS for the first time in over 11 months and reported she had entered a drug rehabilitation facility and was in the quarantine stage of the program.  Mother said that she was entering drug treatment to keep her parental rights.  The social worker informed mother that only monitored visits and phone calls with the children would be allowed at that time.  When the social worker informed mother that DCFS was still recommending termination of parental rights, mother hung up on the social worker.

The social worker helped mother schedule video chats with the children.  It was arranged for mother to have weekly visits with Alyssa and Chloe for an hour, to be monitored by the paternal grandparents.  Mother also had 15-minute video visits with Dominic, who was developmentally delayed and unable to sit still for long.

Alyssa and Chloe expressed an age-appropriate understanding of adoption.  Both were in agreement with being adopted by the paternal grandparents.  Dominic's caregivers had provided him with a stable and loving home and were attentive to the child's regional center services, which consisted of three weekly sessions.

No issues were reported with mother's video visits with Alyssa and Chloe, although the paternal grandmother reported that the girls were unusually quiet after the visits.  An in-person visit with Alyssa and Chloe was planned, but the paternal grandmother expressed concern because the children had not seen mother in 22 months.  Mother's video visits with Dominic lasted about 30 minutes due to the child's low attention span.  Dominic was preverbal.  All three children had been with their

respective caregivers since May 5, 2019.  All three children were bonded with their caretakers.  The social worker reported it would be detrimental to the children if their respective adoptions did not occur.

**Mother's section 388 petitions**

The section 366.26 hearing was continued, and on July 7, 2021, mother filed separate petitions for each child pursuant to section 388.  Mother sought reinstatement of reunification services.  She argued that her request was in the children's best interests because it would allow mother to demonstrate her ability to provide for the children's health, safety, and well-being, reinforce their bond, and allow them to work towards reunification.  Mother asserted that she had consistently visited the children since she had entered rehabilitation and that she was sober and had tested negative for drugs since September 2020.  Attached to mother's petitions was a letter from mother's residential treatment center stating that mother had entered the program on September 30, 2020, and completed treatment in good standing on January 12, 2021.  A letter from mother's outpatient treatment center indicated that mother had started outpatient treatment in January 2021 and had been compliant in fulfilling the program's requirements and testing negative for drug use.

The juvenile court set the matter for hearing and ordered DCFS to respond to mother's petitions.

**DCFS response to section 388 petitions**

DCFS reported that during an August 2021 interview, mother stated that she was renting a room with her partner, with whom she had been in a relationship for two years.  She met her partner when they were homeless on the streets and using drugs

7

together.  Mother said she planned to reunify with the children and live together with the children and her partner.  Mother reported being sober for 11 months.  She was attending 12-step meetings two to three times per week.  She had also completed six months of aftercare treatment.  Mother was unemployed.  She had enrolled in domestic violence treatment and completed three classes to date.

Mother acknowledged that she had no in-person visits with Dominic and had not seen the child since his birth.  Mother admitted that Dominic did not know who she was.  Mother said she had three or four in-person visits with Alyssa and Chloe.

DCFS reported that mother had been inconsistent with her calls to Dominic.  Mother called the child once per month from January 2021 through April 2021, two to three times in May 2021, and twice in June 2021.  Her calls in July 2021 were more consistent.

Mother had an in-person visit with Alyssa and Chloe in March 2021.  The girls were shy at first but started to open up.  The social worker monitored another visit between mother and the girls in July 2021, during which the girls appeared playful with mother.

DCFS recommended that the juvenile court deny mother's section 388 petitions.  DCFS stated that while mother was beginning to address case issues, she had previously not contacted the children for 16 months.  The children had emotional bonds with their respective caretakers, and it would be detrimental to the children to have those bonds disrupted.

**Unfulfilled aspects of mother's case plan**

On September 30, 2021, DCFS received an e-mail from mother's domestic violence treatment provider stating that

mother had been terminated by the agency. Mother had enrolled on August 5, 2021, and attended three sessions, but then had more than three consecutive absences.

On October 12, 2021, DCFS received a letter indicating that mother had reenrolled in domestic violence counseling with the same agency. DCFS opined that, although mother had reenrolled in domestic violence treatment, she had not made sufficient progress. In addition, mother had not addressed her past drug use by enrolling in individual counseling or testing for drugs and alcohol weekly as called for by her case plan.

**Hearing on mother's section 388 petitions**

On October 25, 2021, the juvenile court conducted the hearing on mother's section 388 petitions.

Mother's exhibits, which the court accepted into evidence, included five clean drug tests between January and March 2021, Alcoholics Anonymous (AA) sign-in sheets from the same time period, a letter indicating mother completed a three-and-a-half-month residential drug treatment program, and two positive letters from mother's AA sponsor.

Mother testified. She acknowledged using methamphetamine and admitted that she stopped participating in the juvenile court case because she returned to using drugs. Mother found that having her children taken away from her was hard on her. Mother acknowledged that the court had ordered her to complete a substance abuse treatment program with aftercare, individual therapy, drug testing, a domestic violence support group, and parenting classes.

Mother described her residential drug treatment between September 2020 and January 2021 and informed the court what she had learned. Mother's residential treatment program did not

9

allow in-person visits, but she maintained phone and virtual visits with the children during her residential treatment.

Since leaving the residential treatment program, mother had participated in outpatient treatment for six months. Mother reported that since September 2020, she had attended three to four AA meetings a week. Mother had recently enrolled in a domestic violence program, since the programs she previously called did not have availability. Mother spoke almost daily with her sponsor and was currently through step 1 of her 12-step program with her sponsor. Mother stated that she was in a relationship with her partner, who was clean and sober.

Mother had five in-person visits with Alyssa and Chloe. Mother had not had an in-person visit with Dominic since he was born. Mother said the pandemic was the reason she did not have in-person visits with Dominic. Mother's virtual visits with Dominic lasted 15 to 20 minutes.

Mother had attended two domestic violence classes so far. She had not participated in individual therapy with a licensed therapist apart from counseling at her treatment program. Mother had not drug tested from approximately May 2021 to the present.

Mother's attorney urged the juvenile court to grant mother's section 388 petition. The children's attorney argued that the court should deny mother's section 388 petition, noting that mother had a lack of recent drug tests, was still working on her first step despite being in AA for a year, and had only attended two domestic violence classes. In addition, mother had not attended individual therapy, had no in-person contact with Dominic and only limited, friendly in-person visits with Alyssa and Chloe. Alyssa and Chloe enjoyed visits with their mother,

10

but did not want the section 388 petition granted. DCFS argued that mother had shown no evidence of drug testing or receiving outpatient treatment since March 2021 and pointed out that mother waited over a year to have contact with the children. DCFS joined the children's counsel in asking that the petition be denied.

The juvenile court noted that this was not an easy case and commended mother for completing the residential substance abuse program and participating in the outpatient program, but found mother was in the process of changing circumstances, rather than exhibiting changed circumstances. The juvenile court also observed it was not in the best interests of the children to reunify with mother. The court indicated its focus was the lack of time the children spent with mother and their need for permanency. The court denied mother's section 388 petitions.

The section 366.26 hearing was continued for five weeks, in order for mother to have in-person visitation with Dominic and for the children to have a sibling visit. The court ordered that visitation was to continue for Alyssa and Chloe.

Mother filed a notice of appeal from the juvenile court's denial of her section 388 petitions on November 3, 2021.

**Section 366.26 hearing**

Mother was present at the final section 366.26 hearing on December 2, 2021. Mother's attorney argued that the juvenile court should find the beneficial parent-child relationship exception and the sibling relationship exception applicable. DCFS and the children's attorney argued that the court should terminate parental rights.

The juvenile court found by clear and convincing evidence that the children were adoptable. It found the beneficial parent-

11

child relationship exception inapplicable because mother lacked a sufficient parental bond. The court also found the sibling relationship exception inapplicable because while Alyssa and Chloe had always lived together, and still did, they had no contact with Dominic since his birth over two years earlier, thus there was no sibling bond. The court terminated mother's parental rights.

Mother filed a second notice of appeal from the order terminating her parental rights on December 2, 2021.

## DISCUSSION

### I.   Applicable law and standard of review

Section 388 allows a parent to petition the juvenile court "upon grounds of change of circumstance or new evidence . . . to change, modify, or set aside any order of court previously made . . . ." (§ 388, subd. (a)(1).) The parent has the burden to prove both (1) a change of circumstance or new evidence that warrants the proposed modification of a prior order and (2) that the proposed modification is in the best interests of the child. (§ 388, subd. (a); *In re Jasmon O.* (1994) 8 Cal.4th 398, 415 (*Jasmon O.*).) Section 388 "'provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information.'" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 (*Mickel O.*).)

The petitioner must show changed, not changing, circumstances. (*Mickel O., supra*, 197 Cal.App.4th at p. 615.) "The change of circumstances or new evidence 'must be of such significant nature that it requires a setting aside or modification of the challenged prior order.'" (*Ibid.*) Even if a petitioner shows a genuine change of circumstance, the petitioner must also "'show

12

that the undoing of the prior order would be in the best interests of the child.'" (*Ibid.*)

The standard of review for a juvenile court's order denying a section 388 petition is abuse of discretion. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158.) The juvenile court's determination "should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).) Under this standard, "'"a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'"'" (*Ibid.*)

## II. Mother's section 388 petitions

Mother argues that the juvenile court abused its discretion in denying her section 388 petitions. Mother argues that she showed a change of circumstance and that it was in the best interests of her children to grant the petitions. We review mother's arguments below and conclude that the juvenile court did not abuse its discretion in denying mother's petitions.

### A. *Changed circumstances*

After reviewing mother's evidence, including mother's testimony, the juvenile court determined that mother was "in the process of changing circumstances, but I don't believe they are changed." The juvenile court explained that mother had only recently started her domestic violence program. The court also expressed concern that mother was still only on step 1 of her 12-step program after 13 months of attending AA. The court concluded, "I do not believe that [mother] has changed, but I do believe she is changing."

The record shows that the juvenile court's determination that mother had not showed a genuine change of circumstance

13

was well within its discretion.  Mother had a longstanding problem with substance abuse that negatively affected her relationship with her children.  Mother began smoking marijuana when she was 16.  She smoked marijuana throughout her pregnancy with Alyssa and tested positive at the time of Alyssa's birth.   She began smoking methamphetamine during her pregnancy with Dominic, and both she and Dominic tested positive at Dominic's birth.  Mother failed to participate in any treatment or maintain contact with DCFS or the children until the time that reunification services were terminated.

While mother had completed a residential drug treatment program and reported remaining free from drugs since that time, recent evidence supporting her sobriety was lacking.  While testifying at the section 388 petition hearing in October 2021, mother admitted that she had not been drug tested since May 2021.  Mother had no documentation supporting her completion of her outpatient drug treatment.  In addition, mother had not addressed her past drug use by enrolling in individual counseling.  Mother was living with a romantic partner whom she admitted to meeting on the streets and with whom she previously used drugs.  Mother offered no specific evidence regarding her partner's treatment or sobriety.

Juvenile courts have recognized that chronic drug use is not easily resolved.  In *In re Amber M.* (2002) 103 Cal.App.4th 681, 686, for example, a mother had completed residential drug treatment and had been clean for 372 days.  The mother was on step 3 of her 12-step program.  Under those circumstances, the mother was considered "in the early stages of recovery."  (*Ibid.*)  Although the mother in *Amber M.* had completed her domestic violence and sexual abuse treatment, the juvenile court did not

14

abuse its discretion in determining that the mother was merely "progressing in treatment." (*Id*. at p. 687.)

Mother in this matter had even less time abstaining from drug use and was only on step 1 of her 12-step program. In addition, mother had not addressed the court's concerns regarding domestic violence, nor had she participated in individual counseling, which the court had ordered. Although mother's efforts were commendable, the record supports the juvenile court's determination that she did not show a genuine change of circumstances.

Mother argues that the language of section 388 does not present a requirement that there must be completely changed circumstances. Mother argues that the change of circumstance must be viewed in the context of the dependency proceeding as a whole. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 253.) Viewed in that context, mother argues, her change of circumstance was relevant and substantial, rather than irrelevant and minor. It is not our place, however, to reevaluate the evidence that the juvenile court considered. "'"When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*Stephanie M., supra*, 7 Cal.4th at p. 319.) The juvenile court viewed all of the evidence in this matter from start to finish and determined that mother's changes were insufficient to meet the requirements of section 388. The juvenile court did not abuse its discretion in doing so.

In addition, mother attempts to minimize her failure to participate in domestic violence education because it had been over two years since mother had any contact with Dominic's father, and there was no evidence of any domestic violence issues

15

since the detention hearing.  However, it was within the juvenile court's discretion to mandate that mother complete domestic violence education.  Mother suffered domestic violence in two separate relationships with both Dominic's father and Alyssa's father.  Dominic's father had abused mother while she was pregnant, yet mother never contacted law enforcement to protect the child.  The juvenile court acted well within its discretion in finding that mother's failure to completely address her problematic relationships showed that her circumstances had not sufficiently changed.[4]

The juvenile court's determination that mother had not shown sufficiently changed circumstances to warrant granting of her section 388 petitions was not an abuse of the court's discretion.

### B.    *Best interests of the children*

The juvenile court emphasized that the change of order that mother sought was not in the children's best interests.  The court noted that Alyssa had been with the paternal grandparents

---

[4]    *In re J.M.* (2020) 50 Cal.App.5th 833 is distinguishable.  In that case, the mother established a substantial change in her circumstances in that she "had not been in contact with Father for over a year, had completed all required domestic violence training, and nothing suggested Mother was or had been in another potentially violent or abusive relationship." (*Id.* at p. 846.)  Because domestic violence was the "sole basis for juvenile court jurisdiction," the juvenile court abused its discretion in concluding that mother had not shown changed circumstances. (*Ibid.*)  In contrast, mother here has not completed her domestic violence training, nor shown such substantial progress in addressing the basis for juvenile court jurisdiction.

for the past five years, and for over a year of that time had no contact at all with mother.  In addition, mother had no in-person contact with Dominic.  The court informed mother, "We're at a point now that this case came in 28 months ago, and for the majority of that, the kids haven't had any contact with you."  The court emphasized that the children spent very little time with mother and that at this point they needed permanency.

The court was correct to focus on permanency at this stage of the proceedings.  The presumption that arises after termination of reunification services is "that continued care is in the best interest of the child." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)  The presumption is a rebuttable one, but it requires "more than a last-minute oral attempt by a parent to delay permanency for a child who has already spent as much as 22 months in out-of-home placement." (*Ibid.*)

The court emphasized mother's lack of a relationship with the children.  Mother acknowledged that she had not had an in-person visit with Dominic in the nearly two and a half years since the child was born.  Her virtual visits were brief and inconsistent. During this absence, Dominic had been placed with foster parents who provided him with a stable and loving home, and who wished to adopt him.  Dominic's caretakers were attentive to his needs and regional center services, which took place several times a week.  Dominic was bonded to his foster mother and had never known another home.  The social worker opined that it would be detrimental to Dominic to disrupt his placement.

Alyssa and Chloe were also in a stable and loving home with the paternal grandparents.  They had lived with the paternal grandparents even before the commencement of these proceedings.  At the outset of the proceedings, the paternal

17

grandfather informed DCFS that Alyssa had been living with paternal grandparents for over a year and Chloe had been living with them for a year. Mother testified that Alyssa had been living with the paternal grandparents "on and off for about five years." After the proceedings began, Alyssa and Chloe did not have contact with mother for 17 months. After mother resumed contact, the children had video visits and only five in-person visits with mother.

Both Alyssa and Chloe had age appropriate understandings of adoption and expressed that they wanted to be adopted by the paternal grandparents. DCFS opined that Alyssa and Chloe had emotional bonds with their caretakers and that it would be detrimental to them if the bond were disrupted.

Given this evidence, it was not an abuse of the juvenile court's discretion to refrain from delaying permanency by granting mother additional reunification services.

Mother argues that she met the best interest test under the approach set forth in *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530-532, under which the court considers (1) the seriousness of the problem that led to the dependency and the reason for any continuation of that problem, (2) the strength of the relative bonds between the dependent child and both the parent and the caregivers, and (3) the degree to which the problem may be easily removed or ameliorated and the degree to which it actually has been. Mother argues that there was no evidence that her problems with substance abuse and domestic violence were continuing at the time of the section 388 petitions. Mother further argues that Alyssa's and Chloe's strong bond with their caretakers did not dissolve the bond that they had with mother. In addition, mother argues that it is always in a child's best

18

interest to remain with his or her parents when it is safe to do so, because the child has a fundamental interest in living with his or her parents. (*Jasmon O., supra*, 8 Cal.4th 398, 418-419.)

The juvenile court weighed the evidence before it and determined that mother's request did not further the best interests of the children. While mother puts a positive spin on her recent efforts and her bonds with the children, the juvenile court was not required to interpret the evidence as mother has. A court acts within its discretion when it determines that "after a child has spent a substantial period in foster care and attempts at reunification have proved fruitless, the child's interest in stability outweighs the parent's interest in asserting the right to the custody and companionship of the child." (*Jasmon O., supra*, 8 Cal.4th at pp. 419-420.) In this case, the record supported the juvenile court's decision that permanency was of the utmost importance for these children. The court did not abuse its discretion in so holding.

## III. Termination of parental rights

Mother's sole argument as to termination of her parental rights is that the juvenile court acted prematurely in terminating her parental rights because her section 388 petitions should have been granted. In other words, the denial of mother's section 388 petitions, which led to the termination of parental rights, was prejudicial error.

We have determined that the juvenile court did not abuse its discretion in denying mother's section 388 petitions. Therefore, we affirm the order terminating mother's parental rights.

## DISPOSITION

The juvenile court's orders denying mother's section 388 petitions and terminating mother's parental rights are affirmed.

_____
CHAVEZ, J.

We concur:


_____
ASHMANN-GERST, Acting P. J.


_____
HOFFSTADT, J.